IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ROBERT LACEY, As Vice-President, and
on behalf of and for the use of GRAPHIC
COMMUNICATIONS INTERNATIONAL
UNION, AFL-CIO, ET AL.,

      Plaintiffs,

vs.       No. 4:04CV00184 SWW

BIG IMPRESSIONS, INC.,

      Defendant.

**Memorandum Opinion and Order**

Before the Court is plaintiff's motion for partial summary judgment to which defendant has responded and plaintiff has replied. For the reasons stated below, the Court finds the motion should be granted.

**Background**

Plaintiff Graphic Communications International Union, AFL-CIO ("GCIU") owns the right to its mark registered in the United States Patent Office and in Arkansas. Defendant Big Impressions, Inc. ("Big Impressions") is a printer engaged in products affecting commerce. On October 7, 2003, Big Impressions entered into a license agreement and a purchase agreement with Clark for President, Inc. ("the Campaign") to provide a variety of printed campaign materials. The license agreement, signed by Randall Scott Wallace, president of Big Impressions, required that all of the printed materials carry the union bug as evidence of being union-made. Big Impressions was not a union shop when Wallace signed the licensing

agreement with the Campaign. Wallace intended to broker the work for the Campaign through a union shop in order to obtain the required union bug. Big Impressions had to have such an agreement with a union shop to be able to comply with its contractual requirement to provide union-made materials to the Campaign.

Big Impressions entered into a purchase agreement with Allied Printing of Helena, Arkansas ("Allied") to produce the materials. Although Allied had a previous GCIU Label License Agreement, it had expired in 1998 and was never renewed. As a result, neither Allied nor Big Impressions was authorized to use the GCIU union trademark or bug on materials they produced for the Campaign. Big Impressions affixed Allied's GCIU Union Label to various printed materials that it produced for the Campaign. Some of the materials were made by Allied and some were made by Big Impressions' own employees, including Wallace.

At some point after the issue regarding the trademark arose, Wallace informed the Campaign that Big Impressions was not a union shop and that he had brokered the production of the materials through a union shop. Wallace testified he believed that his authority to attach the union trademark came from his purchase agreement with Allied. Wallace also testified he made some attempt to have Big Impressions become affiliated with the GCIU. The Campaign cancelled its contract with Big Impressions after approximately seven weeks.

On March 4, 2004, GCIU filed a complaint against Big Impressions alleging federal claims of trademark infringement and false designations of origin and false descriptions; and state law claims of misuse of trademark and deceptive trade practices. GCIU now seeks partial summary judgment on its claims of trademark infringement under the Lanham Trademark Act.

**Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587 (citations omitted). Further, summary judgment is particularly appropriate where an unresolved issue is primarily legal, rather than factual. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

**Discussion**

Federal trademark law is governed by the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. Among

3

other things, the Act prohibits false commercial advertising that misrepresents the nature of another's products or falsely suggests that another entity has sponsored or approved the advertiser's goods or services. Section 1114 prohibits the commercial use of a reproduction, counterfeit or colorable imitation of a federally-registered trademark without authorization of the owner. The federal unfair competition provision, imposes civil liability for the use of any word, term, name or symbol that:

> (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125 (a).

For violations of trademark rights under § 1125, § 1117(a) provides for injunctive relief and a damages award of the defendant's profits, actual damages, and the costs of the action. The plaintiff must simply establish the dollar amount of the sales involved with the misuse of the trademark, with the defendant having the burden of demonstrating any costs or other deductions. *See also Co-Rect Products, Inc. v. Marvy! Adver. Photography, Inc.,* 780 F.2d 1324 (8th Cir. 1985). The court has discretion to enter judgment for any amount up to three time the actual damage. If the court finds that a damage award based on defendant's profits is inadequate, it may enter judgment for another amount so long as it is compensatory and not punitive. *See also Metric & Multistandard Components Corp. v. Metric's, Inc.,* 635 F.2d 710 (8th Cir. 1980).

15 U.S.C. §1117(b) provides that for intentional misuse of a trademark, the court should

enter judgment for the greater of three times defendant's profits or plaintiff's damages plus attorney's fees. Prejudgment interest may also be awarded in such cases.

For proven use of a counterfeit mark that is registered with the U.S. Patent Office, on goods or services sold, whether or not the defendant knew of the registration, the plaintiff may elect to recover statutory (rather than actual) damages as determined by the court between $500 and $100,000 per mark per type of goods sold. For willful violations, the court may award up to $1,000,000 in statutory damages. 15 U.S.C. § 1116(d)(1)(B)(i); § 1117(c). Section 1125(c) addresses remedies for dilution of famous marks and provides that "the owner of the famous mark shall be entitled only to injunctive relief . . . unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark." 15 U.S.C. § 1125(c)(2).

Plaintiff GCIU contends Big Impressions violated the Lanham Act by using the union bug without its authorization, causing confusion and deceiving the Campaign into believing the printed materials it purchased were in fact made by union labor. This, GCIU asserts, was an infringement of its trademark. In addition, GCIU contends Big Impressions' use of the union bug diluted its exclusive right to use the trademark.

Citing *Purolator, Inc. v. EFRA Distributors, Inc.,* 687 F.2d 558 (1st Cir. 1982), Big Impressions argues GCIU has made no showing that any use of its bug by Big Impressions had an adverse impact on the sale of its products or its goodwill as required to invoke the Lanham Act. In *Purolator*, the defendant was manufacturing automobile filters under the name "Puro Filter" in Illinois and shipping them to Puerto Rico for sale. Purolator sued under the Lanham Act, arguing that the use of the "Puro Filter" trademark constituted an infringement of

Purolator's trademark. The defendant challenged the court's subject matter jurisdiction, arguing that because its mark was not visible during the interstate shipment of the goods, its mark was not used in interstate commerce. The court held the defendant's argument was without merit, stating: "[A]n adverse effect on the sales or goodwill of one whose trademark is used in interstate commerce is a sufficiently substantial effect on interstate commerce to entitle the registrant to invoke the protections of the Lanham Act, even if the sales of defendant are wholly intrastate." 687 F2d. at 559. To the extent that Big Impressions is arguing that this Court lacks subject matter jurisdiction, the Court finds that argument without merit.

While Big Impressions disputes that any infringement or dilution occurred, it also states that "[a]s to copyright infringement, there is no doubt that the letter of the law is such that there was, despite reasonable steps taken by Defendant to procure authentic union production, unlicensed use of the bug." As to both copyright infringement and trademark dilution, Big Impressions contends there is a genuine issue of fact as to whether its acts were knowing or intentional.

In reply to Big Impressions' defense that it relied in good faith on Allied's representation that it could use GCIU's property, plaintiff asserts that intent is not addressed by the statute. Section 1125 provides that trademark infringement occurs when a mark is used by someone other than the owner in such a way that is likely to cause confusion, mistake or deceive others as to the source of the goods or services. Section 1114 provides that infringement is any use of a trademark on goods that is deceptively similar to a registered mark. Here, there is no dispute that the Campaign reasonably believed that Big Impressions' misuse of the GCIU bug meant that the printed materials it purchased were in fact made by union workers. Wallace admitted that Big

Impressions' use of the GCIU trademark was an infringement. In addition, GCIU has offered uncontroverted evidence that Big Impressions' misuse of the GCIU bug diluted GCIU's exclusive right to use its trademark.

The Court finds there is no genuine issue of material fact at issue as to GCIU's liability claims against Big Impressions under the Lanham Trademark Act and that GCIU is entitled to damages for Big Impressions' violations of trademark rights under 15 U.S.C. §§ 1125 and 1117(a). The Court therefore grants GCIU partial summary judgment on Big Impressions' liability.

GCIU argues it is also entitled to relief under 15 U.S.C. § 1117(b) because Big Impressions intentionally and deliberately misused its trademark. In support of its argument, GCIU points to undisputed evidence that Big Impressions was not a union shop when Wallace signed the agreements with the Campaign; Big Impressions had never been involved in the production of printed materials by employees covered by a collective bargaining agreement prior to its work for the Campaign; the purchase agreement Big Impressions entered into with Allied did not specify that the goods were to be made by employees covered by a collective bargaining agreement or that Allied was authorized to use the GCIU trademark or any union bug; and Big Impressions affixed Allied's GCIU Union Label to various materials that it produced for the Campaign.

Wallace claims that at the time they entered their agreement, Allied represented that it was a union ship in good standing with the right to use the union bug, and further represented that any materials produced by Big Impressions as part of its agreement with Allied could properly use the union bug. *See* Pl's. Statement Undisputed Facts, Ex. G (Wallace Dep).

The Court finds there is a genuine issue of material fact was to whether Big Impressions intentionally and deliberately misused GCIU's trademark or union bug.

**Conclusion**

IT IS THEREFORE ORDERED that plaintiff's motion for partial summary judgment [docket entry 48] is granted to the extent that defendant is liable on the claims under the Lanham Act. Defendant is enjoined from any further misuse of plaintiff's trademark. Defendant is further directed to provide an accounting to document its profits from its course of misconduct.

SO ORDERED this 6th day of July 2005.

/s/Susan Webber Wright

CHIEF JUDGE
UNITED STATES DISTRICT COURT